UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

LISA SMITH,

                              Plaintiff,

              -vs-                                        12-CV-1169-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                              Defendant.

─────────────────────────────────────────

APPEARANCES:            JAYA ANN SHURTLIFF, ESQ.
                        Law Offices of Kenneth Hiller
                        Amherst, New York
                        Attorneys for Plaintiff

                        WILLIAM J. HOCHUL, JR.
                        United States Attorney, Western District of New York
                        (GAIL Y. MITCHELL, AUSA, of Counsel)
                        United States Attorney's Office
                        Buffalo, New York
                        Attorneys for Defendant.

      This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny.  Item 15.

      Plaintiff Lisa Smith initiated this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g) ("the Act"), to review the final determination of the Commissioner of Social

Security ("Commissioner") denying plaintiff's application for disability insurance benefits,

─────────────────────────

[1]At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and
was properly named in the complaint as the defendant under 42 U.S.C. § 405(g).  On February 14,  2013,
Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the
defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying the office of Commissioner of Social
Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure.  For
continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

as provided for in Title II of the Act.   Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff was born on March 4, 1972 (Tr. 29, 148).[2]   She applied for disability insurance benefits on February 16, 2010, alleging disability due to depression, anxiety, and post-traumatic stress disorder, with an onset date of September 22, 2008 (Tr. 148).   Upon denial of the application at the initial level of agency review (Tr. 50), plaintiff requested  a hearing which was held on August 29, 2011, before Administrative Law Judge ("ALJ") John P. Costello (Tr. 24-49).   Plaintiff appeared and testified at the hearing, and was represented by counsel.

On September 8, 2011, ALJ Costello issued a decision denying plaintiff's application for Title II benefits (Tr. 9-19).  Following the five-step sequential process for evaluating disability claims outlined in the Social Security Regulations at 20 C.F.R. § 404.1520(a), the ALJ determined that plaintiff's impairments, while severe, did not meet or medically equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically, Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) (Tr. 15-16).   The ALJ found that the evidence in the record, including reports and opinions of consultative and treating medical sources, plaintiffs' work records, and plaintiff's testimony at the hearing regarding the limiting effect of her symptoms,

---

[2]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 6).

demonstrated that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain non-exertional limitations[3] (including being limited to low stress work involving limited contact with the public and co-workers) (Tr. 16-18).   Based on her age (36 as of the alleged onset date; 39 at the time of the hearing), education (high school), work experience (past relevant work as a bill collector), and RFC, and considering the testimony of a vocational expert (Dr. Peter Manti) with regard to the effect plaintiff's non-exertional limitations would have on the occupational base of unskilled work at all exertional levels, the ALJ determined that a finding of "not disabled" was appropriate under the framework of the Medical-Vocational Guidelines (the "Grids"), Rule 204.00 (Tr. 18-19).   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00.

The ALJ's decision became the Commissioner's final determination on September 27, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-6).   Plaintiff then filed this action on November 26, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and the parties now move for judgment on the pleadings under Fed. R. Civ. P. 12(c).

In support of her motion for judgment on the pleadings, plaintiff contends that the case should be remanded to the Commissioner for further proceedings because the ALJ failed to properly assess the opinions of treating and consultative medical sources in

---

[3]"Nonexertional limitations" are defined in the Social Security Regulations as "limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, [which] affect only [the claimant's] ability to meet the demands of jobs other than the strength demands …."  20 C.F.R. § 404.1569a(c)(1).  As pertinent here, examples given include: difficulty functioning due to nervousness, anxiety, or depression; difficulty maintaining attention or concentrating; and difficulty understanding or remembering detailed instructions.  20 C.F.R. § 404.1569a(c)(1)(i) - (iii).

determining plaintiff's RFC.[4]  *See* Items 10, 13.  The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed.  *See* Items 9, 12.

## DISCUSSION

### I.      Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record,

---

[4]Plaintiff also contends that remand is appropriate because the ALJ's analysis contains several factual errors and unreasonable conclusions.  Because the court finds plaintiff's argument regarding the ALJ's assessment of the medical evidence to be determinative, the court declines to address this alternative ground for remand.

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *see also Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational

probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).   Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II.  Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work (or, as in this case, the claimant has no past relevant work), the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets her burden of proof, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.     The ALJ's Disability Determination

In this case, ALJ Costello found at step one of the five-step sequential evaluation process that  plaintiff had not engaged in substantial gainful employment activity since her alleged onset date of September 22, 2008 (Tr. 14).  At step two, as indicated above, the ALJ found the evidence in the record sufficient to establish that plaintiff's mental impairments were "severe" within the meaning of the Regulations (Tr. 14-15).

At step three, the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of a listed impairment, specifically considering the criteria for mental impairments under Listings 12.04 and 12.06 (Tr. 15-16). To satisfy the criteria of either of these Listings, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

1.    Marked restriction of activities of daily living;

2.    Marked difficulties in maintaining social functioning;

3.    Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4.    Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), 12.04(B) (Paragraph "B" criteria). A claimant can also satisfy the criteria of either Listing by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

1)    Repeated episodes of decompensation, each of extended duration;

2)    A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate;

3)    History of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C), 12.04(C) (Paragraph "C" criteria).

With regard to Paragraph B criteria, ALJ Costello found that plaintiff had no restriction in the activities of daily living; moderate difficulties in maintaining social

-9-

functioning; no deficiencies of concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 15-16). The ALJ likewise found no evidence to establish the presence of any of the Paragraph C criteria (Tr. 16). Accordingly, the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of Listings 12.04 or 12.06.

The ALJ then determined that plaintiff had the RFC to perform the full range of work at all exertional levels, but was limited to "low stress" work involving no contact with the public, and occasional contact with co-workers (Tr. 16). In making this assessment, the ALJ found that the medical evidence in the record did not support plaintiff's allegations with respect to the limitations imposed by her mental impairments, placing particular emphasis on the report and opinion of consultative psychologist Adele Jones, Ph.D., who conducted a psychiatric evaluation of plaintiff in May 2010. Dr. Jones reported that, on mental status examination, plaintiff was cooperative with an adequate manner of relating; her eye contact was appropriate; speech was fluent and clear; thought process was coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia; affect was of full range; attention, concentration, and memory skills were all intact; cognitive functioning was average; and insight and judgment were good (Tr. 457-58). In Dr. Jones' opinion, plaintiff was able to follow and understand simple directions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress, but "does not appear able to relate adequately with others." (Tr. 458-59). Dr. Jones found the results of the mental status examination "to be consistent with psychiatric problems, but in itself, this

does not appear to be significant enough to interfere with [plaintiff]'s ability to function on a daily basis." (Tr. 459).

The ALJ accorded "great weight" to Dr. Jones' opinion regarding plaintiff's mental residual functional capacity, and further relied on the Psychiatric Review Technique Form ("PRTF") completed by State agency review psychologist Thomas Andrews in making his assessment of plaintiff's limitations and restrictions in the categories identified in the Paragraphs B and C criteria of Listings 12.04 and 12.06 (Tr. 471-72; see Tr. 17). The ALJ also discussed evidence provided by plaintiff's treating sources, ascribing "little weight" to the March 29, 2010 assessment of Karyn M. Mesiti, a physician's assistant at Oak Orchard Community Health Center, indicating that plaintiff's mental impairments caused more severe functional limitations and restrictions in the Paragraph B and C categories than those indicated by the reviewing consultant (Tr. 17-18; see Tr. 433-36).

The ALJ then relied on the testimony of the vocational expert to find that, while plaintiff could not return to her past relevant work as a bill collector, considering plaintiff's RFC, age, education, and work experience, she could make a successful adjustment to other work that exists in significant numbers in the national economy, allowing a finding of "not disabled" under the framework of Medical-Vocational Rule 204.00 (Tr. 23-24).

## IV.    Plaintiff's Motion: Evaluation of the Medical Evidence

Plaintiff contends that the ALJ failed to properly explain his reasoning for according substantial weight to the opinion of Dr. Jones, the examining consulting psychologist, in assessing plaintiff's mental residual functional capacity. In this regard, the regulations provide that in determining eligibility for SSI benefits, the ALJ must consider various factors

in deciding how much weight to give to any medical opinion in the record, "[r]egardless of its source," including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the … physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. § 416.927(c)).[5]

Under these rules, the opinions of treating physicians as to the nature and severity of the claimant's impairments are generally given "more weight" than other medical source opinions, and "controlling weight" if  based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.  20 C.F.R. § 416.927(c)(2).  This is because  treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*

 The regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion."  *Id.*; *see also Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight

---

[5]20 C.F.R. § 416.927 was amended effective March 26, 2012, with the result that subsection (d) was re-designated as subsection (c), without substantive change.  With regard to this case, the ALJ's decision was issued before the effective date of the amendment, and the Appeals Council's ruling was issued after the effective date.  For continuity, the court will herein refer to 20 C.F.R. § 416.927(c), presently in effect.

attributed to a treating physician's opinion); *Halloran*, 362 F.3d at 32-33 ("This requirement

greatly assists our review of the Commissioner's decision and 'let[s] claimants understand

the disposition of their cases.' ") (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

The regulations further recognize that:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence ….

20 C.F.R. § 416.927(e)(2)(i).  Thus, the opinions of consulting sources "may constitute

substantial evidence if they are consistent with the record as a whole."  *Barringer v.*

*Commissioner of Social Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citing *Mongeur v.*

*Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

1996); SSR 96–6p).  This is particularly so where the consultant directly examines the

applicant.  *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion

of a source who has examined you than to the opinion of a source who has not examined

you.").

As discussed above, in making his assessment of plaintiff's mental residual

functional capacity in this case, the ALJ indicated that he gave significant weight to the

examining psychological consultant's opinion and the review psychologist's PRTF.  With

regard to treating source evidence, the ALJ referred only to the treatment notes from

plaintiff's March 29, 2010 visit with PA Mesiti (indicating more severe functional limitations

and restrictions in the Paragraph B and C criteria than those assessed by the State agency

review psychologist) and a note from plaintiff's primary care physician indicating that as of January 18, 2011, plaintiff was "unable to work until seen by her psychiatrist" (Tr. 483). However, the court's review of the record reveals substantial evidence from plaintiff's treating sources which the ALJ either overlooked or ignored, and which should have triggered compliance with the requirement to consider the factors set forth at 20 C.F.R. § 416.927(c) in deciding how much weight should be attributed to this evidence.

For example, the record contains detailed notes and reports from Dr. Andrew Wurl, Ph.D., a psychology intern who saw plaintiff at Orleans County Mental Health Clinic on several occasions between November 2010 and July 2011. Upon conducting a comprehensive initial diagnostic interview of plaintiff on November 10, 2010, Dr. Wurl reported that plaintiff demonstrated "severe" or "moderate" impairments in several areas of social  functioning (Tr. 509). Plaintiff saw Dr. Wurl again in January, April, May, June and July 2011, and on each occasion Dr. Wurl provided a clearly written report containing his assessment of plaintiff's mental status and functional limitations (*see* Tr. 496-519, 524-40). Yet, the ALJ's decision contains no specific reference to this evidence, nor is there any discussion of the ALJ's reasons for the weight, or lack of weight, he attributed to the information in Dr. Wurl's reports.

Thus, where (as here) the ALJ does not give controlling weight to treating source statements which "reflect judgments about the nature and severity of the claimant's impairment(s)," 20 C.F.R. § 416.927(a)(2), the ALJ's failure to give good reasons for the weight attributed to those statements, or to explain the weight given to the reports and opinions of State agency consultants, is legal error.  *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)); *see also Gumaer*

*v. Colvin*, 2014 WL 701770, at *3 (N.D.N.Y. Feb. 24, 2014) (citing cases).  Under such circumstances, courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion …," and should continue to order remand when they "encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  *Halloran*, 362 F.3d at 33; *see also Snell*, 177 F.3d at 133 ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.").

Accordingly, the court finds that the Commissioner's determination cannot be upheld because it  is based on a misapplication of the regulations pertaining to the requirements for considering treating source evidence.  *See Grey v. Heckler*, 721 F.2d at 44.  The case is therefore remanded to the Commissioner for proper evaluation of the evidence in the record, in accordance with the matters set forth herein.  *Dunker v. Astrue*, 2014 WL 297100, at *9 (W.D.N.Y. Jan. 27, 2014) (remand for further proceedings appropriate where ALJ not only failed to give good reasons for why he did not credit treating source's assessment, but "completely failed to acknowledge [the treating source]'s opinion at all."); *Austin v. Colvin*, 2013 WL 4077884, at *10-11 (E.D.N.Y. Aug. 12, 2013) (remand for further proceedings appropriate where ALJ failed to give good reasons for "placing zero weight" on findings of treating sources).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 10) is  granted, and the matter is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this decision and order.

The Commissioner's motion for judgment on the pleadings (Item 9) is denied.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff, and to close the case.

So ordered.

_____
        \s\ John T. Curtin
        JOHN T. CURTIN
        United States District Judge

Dated:   May 7, 2014
p:\pending\2012\12-1169.apr17.2014